UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANA AVILA, on behalf of herself and all the other plaintiffs similarly situated,  )<br><br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>JDD INVESTMENT COMPANY,  )<br>d/b/a McDonald's,  )<br>  )<br>Defendant.  ) | No. 21 C 1917<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

From December 2018 until January 2020, Plaintiff Ana Avila, who is of Mexican ancestry, worked as a crew member for Defendant JDD Investment Company d/b/a McDonald's ("JDD Investment") at two of its McDonald's locations. After resigning her position, Avila filed this lawsuit, alleging that JDD Investment engaged in unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/2 *et seq*. She also alleges that JDD Investment did not pay her proper overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq*. Finally, because JDD Investment used a biometric timekeeping device at its two locations, requiring her to clock in and clock out and allegedly collecting her biometric information without her consent, Avila pursues a claim under the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1 *et seq*. JDD Investment now brings both a motion to stay the proceedings and a partial motion to dismiss the BIPA claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Although the Court does not find outright dismissal or a stay based on pending

decisions from the Illinois Supreme Court and Seventh Circuit warranted, the Court concludes that *Colorado River* abstention applies and requires staying Avila's BIPA claim in favor of parallel proceedings in state court.

## BACKGROUND[1]

JDD Investment owns and operates certain McDonald's locations in Illinois. Avila began working as a crew member for JDD Investment in or around December 2018 at two of its McDonald's locations: 2315 West Ogden, Chicago, Illinois 60608 and 4334 West 26th Street, Chicago, IL 60623. Avila worked for JDD Investment until January 2020, when she resigned following an incident involving her manager that caused her to fear for her safety.

When she began working for JDD Investment, JDD Investment enrolled Avila in its biometric timekeeping program. Through this program, JDD Investment collected Avila's fingerprints, which qualify as "biometric identifier[s]" under BIPA. 740 Ill. Comp. Stat. 14/10. However, JDD Investment never informed Avila in writing that it was collecting her fingerprints and personal identifying information. It also did not inform her in writing of the purpose of this collection or the length of time it would store and use her biometric information. JDD Investment also failed to obtain Avila's written consent or a release that authorized it to capture and collect her biometric information.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*,

---

[1] The Court takes the facts in the background section from Avila's amended complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving JDD Investment's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court only includes those facts relevant to resolution of the pending motion to dismiss.

807 F.3d 169, 173 (7th Cir. 2015). If, as here, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

District courts have the inherent power to control their own dockets, including the power to stay proceedings before them. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019) ("[A] district court has inherent power to exercise its discretion to stay proceedings to avoid unnecessary litigation of the same issues."). How best to manage the court's docket "calls for the exercise of judgment,

3

which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In determining whether to exercise its discretion to stay proceedings, the Court considers "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Berkeley\*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2019 WL 1077124, at *5 (N.D. Ill. Mar. 7, 2019).

## ANALYSIS

In response to Avila's amended complaint, JDD Investment filed two motions: (1) a motion to dismiss the BIPA claim, contending that the Illinois Workers' Compensation Act ("IWCA") preempts the claim, the statute of limitations has run on the claim, she has not sufficiently alleged the claim, or, alternatively, that the *Colorado River* doctrine requires the Court to abstain from deciding her claim; and (2) a motion to stay all proceedings in light of pending appeals in three BIPA cases addressing some of JDD Investment's asserted bases for dismissal of the BIPA claim. The Court first addresses JDD Investment's arguments for dismissal, incorporating its analysis of JDD Investments' claimed need for a stay based on pending decisions relevant to those arguments, and then turns to whether abstention under the *Colorado River* doctrine is appropriate.

### I. IWCA Preemption

JDD Investment first argues that the IWCA preempts Avila's BIPA claim. Alternatively, it contends that, if the Court does not find outright dismissal appropriate, the Court should stay decision on the issue pending the Illinois Supreme Court's decision in *McDonald v. Symphony Bronzeville Park, LLC*, which raises the same question. The IWCA provides the exclusive

4

remedy for accidental injuries that employees sustain in the course of their employment. 820 Ill. Comp. Stat. 305/5(a); *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990). But Avila can avoid IWCA preemption if she establishes "(1) that the injury was not accidental; (2) that the injury did not arise from . . . her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the [IWCA]." *Meerbrey*, 139 Ill. 2d at 463.

Avila alleges that JDD Investment intentionally collected her fingerprints using a biometric timekeeping system after the 2008 enactment of BIPA. This suggests that Avila's injury was not accidental. *See Burlinski v. Top Golf USA Inc.*, No. 19-CV-06700, 2020 WL 5253150, at *5 (N.D. Ill. Sept. 3, 2020) (employer policy of collecting employee fingerprints for timekeeping was not an accidental injury); *Garland v. Morgan Stanley & Co., Inc.*, 2013 IL App (1st) 112121, ¶ 29 ("[T]o show that an injury is not accidental, the employee must establish that [her employer] acted deliberately and with specific intent to injure the employee."). Further, courts have concluded that "BIPA injuries are not compensable under the Workers' Compensation Act" because the "privacy injuries BIPA protects are not the kind of intangible injuries compensable under the Workers' Compensation Act." *Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, No. 20 CV 3200, 2020 WL 7490414, at *3 (N.D. Ill. Dec. 21, 2020). Indeed, the Illinois state and federal courts to have considered the issue agree that the IWCA's exclusivity provision does not bar a BIPA claim. *See McDonald v. Symphony Bronzeville Park*, 2020 IL App (1st) 192398, ¶¶ 27–28 ("[T]he exclusivity provisions of the Compensation Act do not bar a claim for statutory, liquidated damages, where an employer is alleged to have violated an employee's statutory privacy rights under the Privacy Act, as such a claim is simply not compensable under the Compensation Act."); *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d

604, 615–16 (N.D. Ill. 2020) (collecting state and federal cases that show that "courts have unanimously rejected" the idea that the IWCA preempts BIPA claims). The Court agrees that the IWCA does not preempt Avila's BIPA claim.

Apparently recognizing that the current case law does not favor its position, JDD Investment alternatively asks the Court to stay the BIPA claim because the Illinois Supreme Court has granted a petition for leave to appeal the Illinois Appellate Court's decision in *McDonald*. "Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) (citation omitted). But the Court does not agree with JDD Investment that the Illinois Supreme Court's decision to review *McDonald* serves as a persuasive indication that it will decide the IWCA preemption question differently. *See Quarles v. Pret A Manger (USA) Ltd.*, No. 20 CV 7179, 2021 WL 1614518, at *3 (N.D. Ill. Apr. 26, 2021) ("[T]he decision to take the case for review is not a compelling sign that it will be reversed. . . . Predictions can be wrong, but I predict that the Illinois Supreme Court will follow its established test for accidental and compensable injuries and not carve up BIPA into a partially preempted statute."). Thus, the Court joins other federal courts to have considered the issue that have refused to stay BIPA proceedings pending the Illinois Supreme Court's *McDonald* decision. *See, e.g.*, *Herron v. Gold Standard Baking, Inc.*, No. 20-CV-07469, 2021 WL 1340804, at *2 (N.D. Ill. Apr. 9, 2021) ("Because an Illinois Appellate Court has concluded that the IWCA does not preempt an employee's BIPA claim brought against her employer, and because most other courts have held the same, the Court denies GSB's motion to stay this case pending the outcome in *McDonald*."); *Roberson v. Maestro Consulting Servs. LLC*, No. 20-CV-00895, 2021 WL 1017127, at *1 (S.D.

Ill. Mar. 17, 2021) (same). Therefore, the Court denies JDD Investment's motion to stay the BIPA claim pending the Illinois Supreme Court's *McDonald* decision and concludes that the IWCA does not preempt Avila's BIPA claim.

## II. Statute of Limitations

Next, JDD Investment argues that Avila's BIPA claim is time-barred. Alternatively, JDD Investment seeks to stay this case pending two Illinois Appellate Court decisions and one federal interlocutory appeal—*Tims v. Black Horse Carriers, Inc.*, No. 1-20-0562, *Marion v. Ring Container Techs., LLC*, No. 3-20-0184, and *In Re: White Castle System, Inc.*, No. 20-3202—because these courts could decide the timeliness of Avila's BIPA claim.

BIPA itself does not contain an explicit statute of limitations. *Treadwell v. Power Sols. Int'l, Inc.*, 427 F. Supp. 3d 984, 993 (N.D. Ill. 2019); *Quarles*, 2021 WL 1614518, at *3; *Burlinski*, 2020 WL 5253150, at *6. Rather, when applying Illinois law, the applicable statute of limitations depends on the nature of the injury. *Quarles*, 2021 WL 1614518, at *3. Most recently, the Illinois Appellate Court determined that claims under Sections 15(a) and (b) are subject to the five-year limitations period set by 735 Ill. Comp. Stat. 5/13-205, while claims under Sections 15(c) and (d) are subject to the one-year limitations period set by 735 Ill. Comp. Stat. 5/13-201. *Tims,* 2021 IL App (1st) 200563 ¶ 33.

Here, Avila contends that JDD Investment violated Section 15(b). Indeed, Avila alleges that JDD Investment collected and stored her biometric information without notifying her or obtaining her written consent, which amounts to an "informational injury" under Section 15(b). *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 623, 626 (7th Cir. 2020) ("[T]he informed-consent regime laid out in section 15(b) is the heart of BIPA. The text of the statute demonstrates that its purpose is to ensure that consumers understand, before providing their

7

biometric data, how that information will be used, who will have access to it, and for how long it will be retained."). Because Avila alleges JDD Investment breached BIPA's informational requirements as set out in Section 15(b), Illinois' one-year statute of limitations does not apply. *Quarles*, 2021 WL 1614518, at *3 (N.D. Ill. Apr. 26, 2021). Instead, the catch-all five-year statute of limitations applies to Avila's BIPA claim. 735 Ill. Comp. Stat. 5/13-205 (providing that "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued"). Because Avila filed suit within five years of the alleged violations, her claim is timely.

In the alternative, JDD Investment requests a stay based on *Tims*, *Marion*, and *White Castle*. Indeed, some courts have stayed BIPA claims based on the pendency of the appeals in *Tims* and *Marion*. *See, e.g.*, *Herron*, 2021 WL 1340804, at *5 ("Should the Seventh Circuit find that a BIPA violation occurs only when an entity first collects an individual's biometric data, Herron's claims may be time-barred if *Tims* and *Marion* also find that a one or two-year statute of limitations applies."). But, after the filing of its motion to stay, as discussed above, the Illinois Appellate Court issued its ruling in *Tims*, resolving the question of whether the one- or five-year limitations period applies to Avila's Section 15(b) claim.[2] 2021 IL App (1st) 200563. And "*Marion* has been fully briefed but is stayed pending the Illinois Supreme Court's decision in *McDonald*, No. 126511" but, "a decision from the Illinois Appellate Court, like *Tims*, controls, to the extent there are not persuasive indications that the Illinois Supreme Court would rule differently."

---

[2] Movant-appellant filed a petition for leave to appeal *Tims* to the Illinois Supreme Court, but the Illinois Supreme Court has not yet taken action on the petition, and the Court does not find the mere pendency of the petition for leave to appeal warrants a stay.

*JEROME TREADWELL, individually & on behalf of all others similarly situated, Plaintiff, v. POWER SOLUTIONS INTERNATIONAL, INC., Defendant.*, No. 18-CV-8212, 2021 WL 5712186, at *2 (N.D. Ill. Dec. 2, 2021).

JDD Investment further argues that the Seventh Circuit's decision in *White Castle*, an appeal of *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604 (N.D. Ill. 2020), warrants a stay. In *White Castle*, the Seventh Circuit has before it the question of whether BIPA claims accrue only the first time an entity collects or discloses an individual's biometric information or every time the collection or disclosure occurs. *See Herron*, 2021 WL 1340804, at *5 (N.D. Ill. Apr. 9, 2021). Because the five-year statute of limitations applies here, Avila's BIPA claim is timely "regardless of how the Seventh Circuit rules on the accrual issue." *Quarles*, 2021 WL 1614518, at *4. Although the Seventh Circuit's decision may affect the scope of discovery, potential remedies, and possibly the scope of the class, it will not affect whether the statute of limitations bars Avila's BIPA claim. *Id.*; *Wyllie v. Flanders Corp.*, No. 21-CV-3078, 2021 WL 2283737, at *3 (C.D. Ill. May 28, 2021) ("The *Cothron* decision could also materially affect the scope of the possible class claims."). Therefore, the Court does not find it appropriate to stay the BIPA claim pending the Seventh Circuit's decision, instead concluding that the statute of limitations does not bar Avila's BIPA claim.

**III. Sufficiency of Avila's BIPA Allegations**

JDD Investment also argues that Avila's amended complaint lacks any meaningful factual allegations indicating that JDD Investment violated any section of BIPA by possessing, receiving, retaining, or disclosing Avila's biometric information. In response, Avila contends she sufficiently alleged a violation of Section 15(b). Section 15 "places restrictions on the collection, retention, and disclosure of biometric information," with Section 15(b) "requir[ing]

9

private entities seeking to collect biometric information to first (1) inform the person whose biometrics are being collected, in writing, that the information is being collected or stored; (2) inform the person in writing of the 'specific purpose and length of term' for which the biometrics are being collected, stored, and used; and (3) receive a written release from the person." *Wordlaw*, 2020 WL 7490414, at *3 (quoting 740 Ill. Comp. Stat. 14/15(b)).

JDD Investment argues that Avila has failed to state a BIPA claim because she has not alleged it actually possessed, received, retained or disclosed her biometrics. But Avila has alleged that JDD Investment enrolled her in a biometric timekeeping system that collected her fingerprints without meeting the notice and consent requirements outlined in Section 15(b). Although relatively conclusory, this is all Rule 8 requires of Avila to place JDD Investment on notice of the BIPA claim brought against it. *See Quarles*, 2021 WL 1614518, at *5 (plaintiff plausibly alleged a Section 15(b) violation based on allegations that "she provided her fingerprints during the onboarding process; she placed her fingers on a scanner, which compared the scan to a stored digital copy of her fingerprints; she never received written information about Pret's collection, storage, and use practices; and she never executed a written release"); *Wordlaw*, 2020 WL 7490414, at *4 ("[P]laintiff alleges that while working at the Cook County facility from 2016 to 2019, her fingerprints were daily collected without her written consent, and without written notice of the collection or the purpose behind it. This is sufficient to state a claim for unlawful collection under section 15(b).").

## IV. The *Colorado River* Doctrine

In the alternative, JDD Investment asks the Court to abstain from considering Avila's BIPA claim under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because an earlier filed BIPA putative class action against JDD Investment is pending in

St. Clair County, Illinois. *See Arthur v. JDD Inv. Co.*, No. 2020-L-0891. In response, Avila argues that *Colorado River* abstention is not appropriate here because *Arthur* primarily targets McDonald's Corporation, and not JDD Investment or the other McDonald's franchisees named in the case as co-defendants.

The *Colorado River* doctrine provides a federal court with discretion to abstain from hearing a federal case when there is a concurrent state court proceeding if abstention would promote "wise judicial administration." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (citing *Colo. River*, 424 U.S. at 817–18). "The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results." *Id*. (citing *Day v. Union Mines*, 862 F.2d 652, 657 (7th Cir. 1988); *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 694 (7th Cir. 1985)). Abstention under *Colorado River* is appropriate only if the state and federal proceedings are parallel. *Freed*, 756 F.3d at 1018 (citing *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir. 1988)). If the Court determines that the proceedings are parallel, it must then determine whether abstention is proper by weighing ten non-exclusive factors. *Id*. (citing *AAR Int'l Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001)).

Two cases are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498–99 (7th Cir. 2011) (citing *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006)). The primary question for determining whether the state and federal cases are parallel for purposes of *Colorado River* abstention is not whether the cases are "formally symmetrical, but whether there is a substantial likelihood" that the state case "will dispose of all claims presented in the federal case." *AAR Int'l*, 250 F.3d at 518 (citing *Day*, 862 F.2d at 656). The two cases "need not be

11

identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *Id.* (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700–01 (7th Cir. 1992); *Lumen Constr.*, 780 F.2d at 695). Where a plaintiff's federal lawsuit "relies significantly on the resolution of the primary legal issue under consideration" in the state court action, the cases are sufficiently parallel to support *Colorado River* abstention. *Charles v. Bank of Am.*, No. 11 CV 8217, 2012 WL 6093903, at *4 (N.D. Ill. Dec. 5, 2012).

Here, the parties are not identical. Although JDD Investment is a defendant in both cases, because the state court has not certified *Arthur* as a class action, Avila is not yet a party in that case. *See Christoffersen, v. Marchese, Inc.*, No. 19-CV-1481, 2020 WL 4926663, at *3 (E.D. Wis. Aug. 21, 2020) ("[P]utative class members are not parties to the litigation until the class is certified."). But the Court may still find parallelism between the two cases because precise symmetry is not necessary, *see AAR Int'l*, 250 F.3d at 518, and Avila and the named plaintiffs in *Arthur* share similar litigation interests, *see Proctor & Gamble Co. v. Alberto-Culver Co.*, No. 99 C 1158, 1999 WL 319224, at *4 (N.D. Ill. Apr. 28, 1999) (where the two cases involve different parties who share substantially similar litigation interests, parallelism may be found). And although Avila contends that the cases cannot be parallel because JDD Investment is just one of many defendants in *Arthur*, "the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants." *Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004). Thus, though *Arthur* and this case do not involve identical parties, they do involve "substantially the same parties," allowing the Court to find they are parallel. *Tyrer*, 456 F.3d at 752.

Further, both cases involve similar issues, notably that JDD Investment, McDonald's, and other McDonald's franchisees collected and stored their employees' biometric information without complying with BIPA's notice and consent requirements. *Freed v. Friedman*, 215 F. Supp. 3d 642, 651 (N.D. Ill. 2016) ("So the issues [were] substantially the same here and in the state cases" because parties had substantially similar interests). Because the resolution of the question in *Arthur* could dispose of Avila's BIPA claim here, the cases are parallel for purposes of the *Colorado River* doctrine. *See, e.g.*, *Smith v. Bank of Am., N.A.*, No. 14 C 1041, 2014 WL 3938547, at *3 (N.D. Ill. Aug. 12, 2014) (federal case was parallel to the state case where a judgment in the state case would dispose of the basis for the claims in the federal case); *Charles*, 2012 WL 6093903, at *4 (parallelism existed because the federal action relied significantly on the resolution of the primary legal issue under consideration in the state court action).

Next, to determine whether abstention is proper under *Colorado River*, the Court must weigh ten nonexclusive factors: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Freed*, 756 F.3d at 1018.

First, "[t]here is no property at issue in this case," so the first factor is neutral. *Stinson v. LCS Cmty. Emp. LLC*, No. 20 CV 04603, 2021 WL 4978450, at *2 (N.D. Ill. May 3, 2021). With regard to the third factor, although *Arthur* will determine a significant legal issue in this case, it will inevitably create piecemeal litigation, as Avila's non-BIPA claims will proceed

13

before this Court regardless. "But the danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." *Tyrer*, 456 F.3d at 756. Here, allowing the two suits to proceed concurrently would risk duplicative rulings and potentially waste judicial resources on the BIPA claim. The fourth factor also weighs in favor of abstention because *Arthur* was filed in November 2020, five months before this one. *See Delaney v. Specialized Loan Servicing, LLC*, No. 15 C 5260, 2015 WL 7776902, at *4 (N.D. Ill. Dec. 3, 2015) (fourth factor favors abstention where state action was filed before the federal action). Further, the fifth factor favors abstention because BIPA involves Illinois state law, not federal law. *Stinson*, 2021 WL 4978450, at *2; s*ee Smith*, 2014 WL 3938547, at *3 (fifth factor favors abstention where claims in federal case are governed by state law). Because a BIPA claim can be brought in state court, the sixth and eighth factors thereby support abstention. *Stinson*, 2021 WL 4978450, at *2 ("Nor do [the parties] dispute that there is concurrent jurisdiction and that the state forum can adequately protect the plaintiffs' rights, and that these factors also weigh[ ] in favor of abstention."). Finally, with regard to the vexatious or contrived nature of the federal claim, "this factor can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding." *Freed*, 756 F.3d at 1024. True, Avila could have chosen to defer to the state court proceeding on her BIPA claim, but her claims of overtime wages unlawful employment practices are not related to those brought in *Arthur* and it remains an outstanding question whether venue would be proper for those claims in St. Clair County. Therefore, this factor weighs against abstention. But, because seven of the ten *Colorado River* factors weigh in favor of abstention, the Court finds it appropriate to abstain from deciding Avila's BIPA claim. *See Nieves v. Bank of Am., N.A.*, No. 14-cv-2300, 2015 WL

14

753977, at *7 (N.D. Ill. Feb. 20, 2015) (*Colorado River* abstention proper where the state and federal cases are parallel and seven of the ten factors weigh in favor of abstention).  Although JDD Investment urges the Court to dismiss the BIPA claim if it determines abstention is appropriate, the Seventh Circuit has held that "a stay, not a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine."  *Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409 (7th Cir. 1996) (collecting cases).  Therefore, the Court stays Avila's BIPA claim pending further order of Court.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part JDD Investment's motion to dismiss [18] and denies JDD Investment's motion to stay [16].  The Court stays Avila's BIPA claim until further order of Court based on the parallel state court case of *Arthur v. JDD Investment Co.*, No. 2020-L-0891 (St. Clair Cnty. Cir. Ct.).

Dated: December 13, 2021

_____
SARA L. ELLIS
United States District Judge

15